UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LATRICE N. O/B/O
J.A.N.,                                                    19-CV-0664-MJR
                                                           DECISION AND ORDER
                    Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Latrice N.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on behalf of her minor child, J.A.N., seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 10) is denied and defendant's motion (Dkt. No. 11) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

On August 24, 2015, plaintiff applied for SSI on behalf of J.A.N., a child under age eighteen, alleging disability beginning April 13, 2015. (Tr. 125-30)[3] Plaintiff's claim was denied at the initial level, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ") on May 28, 2018. (Tr. 14-32, 33-51, 71) The Appeals Council denied further review of the ALJ's decision on March 27, 2019. (Tr. 1-8) This action followed. (Dkt. No. 1)

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

---

[2] The Court presumes the parties' familiarity with the case.

[3] References to "Tr." are to the administrative record in this case. (Dkt. No. 8)

2

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. *Id.*

3

If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* § 416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* § 416.924(d).

III. *The ALJ's Decision*[4]

The ALJ first found that J.A.N. was a newborn/young infant on the date of the application and an older infant at the time of the hearing decision. (Tr. 20) The ALJ then followed the three-step process for evaluating J.A.N.'s SSI claim. At the first step, the ALJ found that J.A.N. had not engaged in substantial gainful activity since the date of his SSI application. (Tr. 20) At the second step, the ALJ determined that J.A.N. had the severe impairment of left club foot. (Tr. 20) At the third step, the ALJ found that J.A.N. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20-21) The ALJ then proceeded to consider whether J.A.N. had an impairment or combination of impairments that functionally equals the Listings, but concluded that he did not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 21-29) As a result, the ALJ found that J.A.N. had not been disabled within the meaning of the Act. (Tr. 29)

IV. *Plaintiff's Challenges*

Plaintiff seeks remand of the Commissioner's decision on the following grounds: (1) the ALJ erred by failing to consider Listing 101.02 and failing to identify evidence that J.A.N. could ambulate effectively; (2) the functional equivalence finding was unsupported by the appropriate legal standards and substantial evidence; and (3) the ALJ failed to evaluate plaintiff's testimony pursuant to the appropriate legal standards. (Dkt. No. 10-1 at 1, 8-24; Dkt. No. 12)

---

[4] Prior to rendering her decision, the ALJ addressed medical evidence from Shriners Hospital that plaintiff submitted less than five business days before the scheduled hearing. The ALJ found that plaintiff had not met the requirements of 20 C.F.R. § 416.1435(b) and declined to admit the evidence. (Tr. 17) Plaintiff's attorney did not advise that any records were outstanding on the date of the hearing. (Tr. 17, 35-36)

5

### A. Listings Evaluation

Plaintiff first argues that the ALJ erred in evaluating whether J.A.N.'s impairment met the requirements of Listing 101.02 because the ALJ did not point to evidence showing that J.A.N. could ambulate effectively. (Dkt. No. 10-1 at 9-10)

Listing 101.02, "Major dysfunction of a joint(s) (due to any cause)," is

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 101.00B2b[.]

20 C.F.R. § 404, Subpt. P, Appx. 1, Listing 101.02. The "[i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities." Listing 101.00(B)(2)(b).

Here, the ALJ found that J.A.N. did not meet the Listing because he retained the ability to ambulate effectively. (Tr. 21)

Plaintiff points to no evidence that supports her position that J.A.N.'s impairment met the requirements of Listing 101.02. To the contrary, plaintiff testified that J.A.N. could walk, run (with some tripping), kick a ball, climb stairs, and jump on a trampoline with supervision. (Tr. 22, 27, 41, 43, 48) The ALJ discussed this evidence. To the extent that plaintiff seeks a more thorough discussion of the Listings analysis, this was not required of the ALJ in this case. *Jansen v. Comm'r of Soc. Sec.*, No. 16-CV-6153, 2017 WL 3722454, *12 (W.D.N.Y. Aug. 29, 2017) (Where a claimant has not established that he

6

met a Listing, the ALJ's failure to provide a specific rationale does not require remand.); see also Beebe v. Astrue, No. 10–CV–1467, 2012 WL 3791258, *4 (N.D.N.Y. 2012) (ALJ's failure to provide a specific rationale for finding that plaintiff's spinal impairment did not meet Listing 1.04A did not require remand where "plaintiff ha[s] not established that she satisfied all the criteria symptoms of the Listing").

### B. Functional Equivalence Finding

Plaintiff next argues that the ALJ's functional equivalence finding was unsupported by the appropriate legal standards and substantial evidence because the ALJ did not have a non-stale opinion on which to base the functional equivalence determination and the ALJ's domain findings were erroneous. (Dkt. No. 10-1 at 11-23)

In general, "[a] stale medical opinion does not constitute substantial evidence to support an ALJ's findings." Majdandzic v. Comm'r of Soc. Sec., No. 17-CV-1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018) (citing Camille v. Colvin, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), aff'd, 652 Fed. Appx. 25 (2d Cir. 2016) (summary order)). Yet "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion . . . such an opinion may be stale if the claimant's condition deteriorates during that time." Id. (citations omitted).

In evaluating the opinion evidence, the ALJ reviewed the assessment of the State agency medical consultant, Dr. J. Sharif-Najafi, who found that J.A.N. had a marked limitation in the area of health and physical well-being due to his patent foramen ovale and left club foot. (Tr. 23, 57) The ALJ afforded this opinion significant weight as it was

"consistent with the evidence of record, including those records dated after the opinion was rendered." (Tr. 23)

As explained by the ALJ, the record evidence not reveal a deterioration of J.A.N.'s condition. At the time of the opinion, Dr. Sharif-Najafi noted that J.A.N. was not making expected progress and underwent surgery because his heel cord tightness had not been corrected with casts. (Tr. 57) Dr. Sharif-Najafi further noted that while J.A.N. should have been wearing his brace at home for about 23 hours per day, he was wearing it for only about two hours per day. (Tr. 57) Dr. Sharif-Najafi also noted that J.A.N. was already beginning to see a recurrence of the forefoot varus, though it was still supple. (Tr. 57) This summary remained fairly representative of J.A.N.'s condition through the date of the ALJ's decision. J.A.N. continued to have compliance issues with the recommended bracing (see Tr. 372), but his foot remained supple and correctable. (Tr. 319, 328, 329) The ALJ noted multiple instances of parental noncompliance with respect to J.A.N.'s bracing and casting, both before and after his initial surgery on July 28, 2015. (Tr. 22-23)

Plaintiff's contention that Dr. Sharif-Najafi's opinion was stale because of J.A.N.'s "lack of improvement following his initial surgery," (see Dkt. No. 10-1 at 14) is without merit because J.A.N.'s lack of progress was included in the records reviewed by Dr. Sharif-Najafi and recognized in the doctor's opinion. (Tr. 57, 202, 205, 235, 331, 334, 335) For example, Dr. Sharif-Najafi expressly noted that J.A.N. was having "limited progress with left clubfoot" but was otherwise "developing as expected." (Tr. 57) Plaintiff's argument that J.A.N.'s subsequent surgery in March of 2018 invalidates Dr. Sharif-Najafi's opinion fails for the same reason. (Dkt. No. 10-1 at 12) It is well-documented in the record that J.A.N.'s second surgery was the result of noncompliance

8

with bracing and recurrence of the clubfoot, indicating no significant change from the date of the consultative opinion. (Tr. 57, 319-320, 329) Moreover, the ALJ expressly acknowledged the subsequent evidence. *See, e.g., Thompson o/b/o E.I.E.G. v. Berryhill*, No. 17-CV-901, 2019 WL 590680, at *4 (W.D.N.Y. Feb. 12, 2019) (ALJ did not err in relying on allegedly "stale" State agency medical consultant's opinion which was rendered prior to the generation of subsequent medical records).

In a related argument, plaintiff contends that the ALJ was obligated to obtain an opinion from J.A.N.'s treating physician to further develop the record. (Dkt. No. 10-1 at 14-15)

The ALJ in this case appropriately evaluated J.A.N.'s functional impairments based on the record as a whole, including testimony from plaintiff regarding J.A.N.'s alleged limitations, J.A.N.'s medical treatment records, and the consultative opinion. *See* 20 C.F.R. §§ 416.924, 416.924a, 416.924b, 416.926a. The ALJ's duty to further develop the record, which may include ordering a consultative examination or re-contacting a medical source in some circumstances, is implicated only where the overall evidence is insufficient for the ALJ to reach a conclusion as to whether a claimant is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 416.919a(b), 416.920b(b); *see also, e.g., Janes v. Berryhill*, 710 Fed. Appx. 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'") (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Where, as here, "there are no 'obvious gaps' in the administrative record, the ALJ 'is under no obligation to seek additional information in advance of rejecting a benefits claim.'" *Laboy o/b/o ASC v. Saul*, No. 18-CV-00825, 2019 WL 6485172, at *2 (W.D.N.Y.

Dec. 3, 2019) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999), in turn quoting *Perez*, 77 F.3d at 48). The ALJ did not breach her duty to develop the record by not obtaining another medical opinion upon which to base her decision. *See id.* (ALJ appropriately relied on allegedly "stale" State agency medical opinion and did not fail to develop record nor err by declining to order consultative examination to assess child's impairments). As discussed in further detail below, the record contains substantial evidence to support the ALJ's functional equivalence determination.

<u>Moving About and Manipulating Objects</u>

The domain of moving about and manipulating objects considers how a child moves his or her body from one place to another, and how he or she moves and manipulates things. *See* 20 C.F.R. § 416.926a(j). Newborns and infants should begin at birth to explore their world by moving their bodies and using their limbs; learn to hold their heads up, sit, crawl, and stand, and sometimes hold onto a stable object and stand actively for brief periods; and begin to practice their developing eye-hand control by reaching for objects or picking up small objects and dropping them into containers. *See* 20 C.F.R. § 416.926a(j)(2)(i). Older infants and toddlers should begin to actively explore a wide area of their physical environment, using their bodies with steadily increasing control and independence from others; start to walk and run without assistance, and climb with increasing skill; frequently try to manipulate small objects and use their hands to do or get something they want or need; and their improved motor skills should enable them to play with small blocks, scribble with crayons, and feed themselves. *See* 20 C.F.R. § 416.926a(j)(2)(ii).

The ALJ found that J.A.N. had a less than marked limitation in this domain, explaining that J.A.N. "has a left club foot with treatment with bracing and surgeries . . . . [he] learned how to walk but was six months delayed according to the testimony of his mother . . . . [he] is able to walk, run, jump, and ascend and descend stairs." (Tr. 27)

Consistent with the Commissioner's regulations, the ALJ, citing the record evidence, found that at the time of hearing J.A.N. was able to walk, move around the house independently, go for short walks in the neighborhood, run with some tripping, kick a ball, wrestle with his brother, and climb up and down stairs. (Tr. 27, 41-48) *See* 20 C.F.R. § 416.926a(j)(2)(ii); Social Security Ruling 09-6p.

Accordingly, substantial evidence supports the ALJ's finding that J.A.N. had less than marked limitations in the domain of moving about and manipulating objects.

## Health and Physical Well-Being

The domain of health and physical well-being refers to the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's functioning that were not considered in the domain of moving about and manipulating objects. *See* 20 C.F.R. § 416.926a(l). This domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being. *See id.*

In this domain, the ALJ found that J.A.N. had a marked limitation. (Tr. 28-29) She noted that J.A.N. underwent an additional surgery in March of 2018 and was wearing a cast/using a wheelchair during the recovery period, but the treatment records suggested that he would be able to resume normal activities after the post-surgical period. (Tr. 29)

The ALJ properly considered that J.A.N. had limitations in physical functioning because of his treatment. (Tr. 29) See 20 C.F.R. § 416.926a(l)(4). J.A.N.'s documented ability to walk, run, help dress himself, climb up and down stairs, and kick a ball (see Tr. 41-48), despite his casting, braces, and surgeries, supports the ALJ's assessment that J.A.N.'s limitations were no more than marked. See 20 C.F.R. § 416.926a(e)(2)(iv) (The Commissioner may find a marked limitation if a claimant is frequently ill because of his impairment(s) or has frequent exacerbations of his impairment that result in significant, documented symptoms or signs). Moreover, the ALJ's finding was consistent with Dr. Sharif-Najafi's opinion that J.A.N. had marked limitations in this domain, which was in turn consistent with the evidence of record, including those dated after the opinion was rendered. (Tr. 23) See generally Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (The opinion of a State agency consultant may constitute substantial evidence if the opinion is supported by evidence in the record). Finally, plaintiff does not point to any specific evidence (i.e., frequent exacerbations) to support a finding of "extreme limitations." (Dkt. No. 10-1 at 20) See generally Brown o/b/o C.M.B. v. Colvin, No. 13-CV-1073, 2014 WL 7272964, at *3 (W.D.N.Y. Dec. 18, 2014) ("'[T]he burden of proof rests on the claimant at each of the three steps.'") (quoting Jonson v. Colvin, No. 12cv1742, 2013 WL 1314781, at *2 (W.D. Pa. Mar. 28, 2013)).

The above constitutes substantial evidence supporting the ALJ's finding in the domain of health and physical well-being.

### C.    Plaintiff's Testimony

Next, plaintiff avers that the ALJ failed to evaluate her testimony pursuant the appropriate legal standards. (Dkt. No. 10-1 at 23-24)

12

Although the ALJ is free to accept or reject testimony of a claimant's parent, *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir.1988), a finding that a witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record. *Id.* (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983)).

Here, the ALJ considered and relied upon plaintiff's testimony regarding J.A.N.'s functioning. (Tr. 21-22, 27, 29) It is apparent from the decision that, while the ALJ did not reject plaintiff's testimony as incredible, she did not accept plaintiff's allegations that J.A.N.'s impairment was disabling. Stated somewhat differently, there is no indication that the ALJ discounted plaintiff's testimony entirely. Rather, the ALJ relied significantly on plaintiff's testimony about what J.A.N. could and could not do, and reasonably found that considering that testimony, J.A.N. did not meet, medically equal, or functionally equal the Listings. When "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982)).

The ALJ therefore properly found that plaintiff's allegations that J.A.N. was disabled were not entirely consistent with the medical and other evidence of record. (Tr. 22)

D.   **Late-Submitted Evidence**

In her reply brief, plaintiff argues that the ALJ improperly declined to admit evidence relating to J.A.N.'s March 20, 2018, surgery. (Dkt. No. 12 at 5-9) The Court need not consider arguments raised for the first time in reply papers. *See Jones v. Astrue*,

2013 WL 802778, *5 (E.D.N.Y. 2013) (claimant's argument procedurally deficient when not raised in its opening brief) (collecting cases).  In any event, her contention is without merit.  See Shari Lee Z. v. Saul, No. 19-CV-0268, 2019 WL 6840134, at *7 (N.D.N.Y. Dec. 16, 2019) (rejecting argument that ALJ's failure to admit untimely records made the administrative record incomplete) (citing Arthur L. v. Berryhill, No. 518CV304, 2019 WL 4395421, at *4 (N.D.N.Y. June 6, 2019), report and recommendation adopted sub nom. Arthur L. v. Saul, No. 518CV304, 2019 WL 3213229 (N.D.N.Y. July 17, 2019) ("To say that the ALJ was required to admit and consider this evidence despite the fact that it was not submitted in compliance with the five-day rule would make that rule an empty vessel that need not be complied with.").

In sum, the ALJ's decision was supported by substantial evidence and free of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 11) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      February 26, 2021
            Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge